STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT<br>Environmental Division Unit | ENVIRONMENTAL DIVISION<br>Docket No. 68-6-18 Vtec |
| 34 Fitzsimonds Rd 3-Lot Subdivision | DECISION ON MOTIONS |

Brian and Julie Hehir seek to subdivide their property, located at 34 Fitzsimonds Road in Jericho, Vermont, into three lots. The Town of Jericho Development Review Board ("DRB") approved their application with conditions on June 18, 2018. Pursuant to one of these conditions, the DRB required the Hehirs to provide the Town of Jericho ("Town") with a fifteen-foot-wide, 2,000-foot-long easement along two sides of their property to serve as a recreational path for the public ("recreational easement"). At the same time, the DRB denied the Hehirs' request for a waiver of provisions in the Town of Jericho Land Use and Development Regulations ("Regulations") limiting each "lot" and "residential property" in the Town to one curb cut. The Hehirs timely appealed those decisions to this Court on June 28, 2018.

Presently, there are five inter-related motions before this Court pertaining to the recreational easement and the curb cut limitation: the Town's motion to strike or clarify Question 3; the Town's motion to dismiss Questions 3 and 4; the Hehirs' motion to add Questions 5 and 6 should this Court dismiss Question 4; the Town's motion for summary judgment on Questions 1 through 6; and the Hehirs' motion for summary judgment on Questions 1, 2, and 4.

The Hehirs are representing themselves in this matter.[1] Attorneys Claudine C. Safar and James F. Conway, III, appear on behalf of the Town, which is participating in this matter as an Interested Person.

---

[1] We note that our review of the parties' filings has revealed that Julie Hehir has not signed any of the documents purportedly submitted by both her and Brian Hehir. Mr. Hehir is the sole signatory, even for the June 28, 2018 notice of appeal. This Court has a responsibility to enforce the rules of civil procedure equitably and in full. Bloomer v. Gibson, 2006 VT 104, ¶ 14, 180 Vt. 397. While Mr. Hehir may be a practicing attorney, he is participating in this matter as a self-represented litigant. One self-represented litigant cannot represent another. In re Appeal of LiCausi, et al, Nos. 203-11-98 Vtec, 77-5-99 Vtec, 230-11-99 Vtec, slip op. at 3-4 (Vt. Envtl. Ct. Jan. 5, 2000) (Wright, J.) (citing Vermont Agency of Nat. Res. v. Upper Valley Regional Landfill Corp., 159 Vt. 454, 458 (1992)). Further,

**Legal Standard**

When deciding motions for summary judgment, this Court will settle some or all of the contested issues if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. V.R.C.P. 56(a). When cross-motions for summary judgment are before the Court, we consider each motion individually, resolve all doubts in favor of the opposing party, and draw all reasonable inferences to the opposing party's advantage. City of Burlington v. Fairpoint Commc'ns, Inc., 2009 VT 59, ¶ 5, 186 Vt. 332.

In evaluating the facts offered by the respective parties on summary judgment, we take the factual allegations asserted in support of, or in opposition to, each motion as true when they are supported by "specific citations to particular parts of materials in the record," including affidavits, documents, and other evidentiary material. See V.R.C.P. 56(c); see also White v. Quechee Lakes Landowners' Ass'n, Inc., 170 Vt. 25, 28 (1999) (citation omitted). If a moving party fails to properly support an assertion of fact, this Court can consider supported facts presented by the opposing party as undisputed for purposes of the motion and proceed to determine whether summary judgment should be granted. V.R.C.P. 56(e). However, this Court's review of the record is not limited to the materials cited in the parties' statements of fact. V.R.C.P. 56(c)(3). It is also within our discretion to look beyond a statement of fact, or its deficient citation, to consider other materials in the record. Id.

**Factual Background**

We set out the following facts for the sole purpose of deciding the pending motions and defining the context of the present appeal. What follows is not a list of our factual findings. See Fritzeen v. Trudell Consulting Eng'rs, Inc., 170 Vt. 632, 633 (2000) ("It is not the function of the trial court to find facts on a motion for summary judgment . . . ." (citing Booska v. Hubbard Ins. Agency, Inc., 160 Vt. 305, 309 (1993))).

---

each self-represented litigant must separately sign any relevant filings. See V.R.C.P. 79.1; see also In re Hawk's Nest S., LLP Conditional Use/PUD Applications, No. 84-5-10 Vtec, slip op. at 7-8 (Vt. Super. Ct. Envtl. Div. Nov. 29, 2010) (Durkin, J.).

However, when a self-represented litigant like Ms. Hehir is before this Court, we must also "be cautious that the pro se litigant is not 'taken advantage of by strict application of the rules of procedure.'" In re Verizon Wireless Barton Permit, 2010 VT 62, ¶ 22, 188 Vt. 262 (quoting Town of Washington v. Emmons, 2007 VT 22, ¶ 7, 181 Vt. 586 (mem.)). Ms. Hehir's failure to sign appears to be an oversight, not the result of strategic behavior. For this reason, we note the procedural error and require Ms. Hehir to sign any filings she may ascribe to moving forward.

1. Brian and Julie Hehir own two adjacent lots located at 34 Fitzsimonds Road in Jericho, Vermont ("the Property").

2. The Property straddles the line between the Town's Low Density Residential and Rural Agricultural Residential Zoning Districts.

3. In 2014, the DRB granted a boundary line adjustment between the two existing lots.

4. On April 6, 2018, the Hehirs applied to the DRB to subdivide the two existing lots on the Property into three lots.

5. The DRB held a duly noticed hearing on the three-lot subdivision request on May 24, 2018. The DRB also heard the Hehirs' request for a waiver from the Regulations' one curb cut limitation on May 24, 2018. See Regulations §§ 10.4.1, 11.1.2 (setting out the curb cut limitation).

*Curb Cut on the Proposed Lot 2*

6. A curb cut already exists along Barber Farm Road where Lot 2 as proposed will have its direct road frontage.

7. The existing curb cut provides access to a driveway, which runs across the western edge of the proposed Lot 2, in service of the residence on Shawn Danaher's land. The Danaher land is adjacent to the Property. An easement exists over the Property for the Danaher driveway.

8. The Hehirs seek to introduce a second curb cut on proposed Lot 2 to serve a future residence on the Lot.

9. On June 18, 2018, the DRB issued the Hehirs a letter denying their request for a waiver from the one curb cut limitation in the Regulations for Lot 2.

10. According to its June 18, 2018 denial, the DRB premised the decision on its finding that the Hehirs did not fully look at or engineer potential alternative accesses for Lot 2.

*Boundary Line Adjustment*

11. In response to the DRB's denial of their request for a waiver from the one curb cut limit, the Hehirs devised to transfer the western portion of proposed Lot 2, where the curb cut and Danaher driveway are located, to the Danahers.

12. The proposed boundary adjustment involves a transfer of 0.86 acres from the Hehirs to the Danahers.

13.     The proposed boundary adjustment would result in no curb cuts along the road frontage for the revised Lot 2.

14.     The hearings the DRB conducted on the Hehirs' subdivision application and waiver request did not reference a boundary line adjustment.

15.     The DRB did not consider a proposal for a boundary line adjustment in any form below, since the Hehirs did not present their proposal until after the DRB announced its decision.

*Recreational Easement*

16.     Along with denying the Hehirs' request for a waiver from the curb cut limitation, the DRB approved the Hehirs' subdivision application with conditions on June 18, 2018.

17.     Relevant here, Condition 5 of the DRB's approval states: "[T]he applicants will provide to the Town of Jericho a Multi Model easement of fifteen feet wide from between '*calculations point C3 & C4*' on the plan submitted and prepared by Button Professional Land Surveyors, PC dated 2/16/18 extending easterly on Barber Farm Road to and then south westerly along Fitzsimonds Road.  This easement to the Town of Jericho shall be out of the Town Right Of Way."

18.     The Hehirs testified before the DRB that they would not voluntarily offer the recreational easement to the Town.

19.     The Town does not propose to compensate the Hehirs for the recreational easement.

20.     The Town does not propose to acquire the recreational easement through eminent domain proceedings and has not instituted any such proceedings.

21.     The recreational easement would run for approximately 2000 feet, roughly parallel to the Property's northeastern and southeastern boundaries along the roadways.

22.     The Town has not provided specific plans detailing the course or extent of the recreational easement.

23.     The recreational easement is intended for use by pedestrians, bicyclists, and non-vehicular modes of transport generally.

24.     There are not currently any publicly-accessible pathways or roads through the Property.

25.     The recreational easement would not interfere with the building envelope of the proposed Lot 3 but may traverse one or more of the driveways proposed by the Hehirs.

26.     It is not clear from the record whether the recreational easement would obstruct or impede installation and maintenance of a driveway for Lots 1 or 3.

27.     Green Mountain Power Company currently holds an easement for power lines that cuts through the Property.

28.     As part of the Hehirs' proposal, they will provide Green Mountain Power with a 25-foot easement along Barber Farm Road. The power lines will be installed and maintained within this relocated easement.

29.     The recreational easement as proposed will be located within the part of the power-line easement that runs parallel to Barber Farm Road, before the recreational easement splits off to the southwest along Fitzsimonds Road.

30.     The Hehirs timely appealed the DRB's June 18, 2018 decisions on the subdivision application and waiver request to this Court on June 28, 2018.

**Discussion**

In examining the five inter-related motions presently before us, we first consider the Town's motion to strike the Hehirs' Question 3 as duplicative of Questions 1 and 2. We then consider whether the Hehirs' proposed boundary line adjustment is properly before the Court. Next, we evaluate the Hehirs' assertion that the recreational easement condition is an unconstitutional taking requiring just compensation. Finally, we turn to the Hehirs' assertion that the deemed approval doctrine applies to their prior curb cut applications.

**I.      Whether this Court should strike Question 3 as repetitious of Questions 1 and 2.[2]**

As a threshold matter, we assess the Town's motion to strike the Hehirs' Question 3 as redundant with Questions 1 and 2 of the Statement of Questions. Questions 1 and 2 assert (to paraphrase) that the recreational easement condition amounts to an unconstitutional taking. The Town asserts that the Hehirs cannot distinguish Question 3's constitutional claim that the Town's imposition of the recreational easement was arbitrary and capricious from the takings issue raised by Questions 1 and 2.

---

[2] Question 3 of the Hehirs' Statement of Questions asks: "Is the requirement that the applicants dedicate a recreational easement for public use as a condition of approval of this subdivision an arbitrary and capricious application of the Regulations?"

The Rules governing this Court do not explicitly provide for motions to strike, but they do bind this Court to the V.R.C.P. whenever the V.R.E.C.P. do not apply. See V.R.E.C.P. 5(a)(2). Accordingly, we evaluate motions to strike under V.R.C.P. 12(f), which provides this Court with discretion to "order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Motions to strike are not a vehicle for the moving party to dispute the law or facts. In re Ring 85 Depot St. Conditional Use, No. 138-11-15 Vtec, slip op. at 1 n.1 (Vt. Super. Ct. Envtl. Div. July 6, 2016) (Walsh, J.) (citing Watson v. Vill. at Northshore I Ass'n, Inc., No. 2013-451, slip op. at 2 (Vt. May 2014) (unpub. mem.)).

The Town's claim of redundancy focuses on the common constitutional nature of the issues raised in Questions 1, 2, and 3. However, it appears that the Town's claim of redundancy conflates the independent and distinct inquiries of takings law and due process, the latter of which includes claims that the government's actions were arbitrary and capricious. See, e.g., In re Pierce Subdivision Application, 2008 VT 100, ¶¶ 19-20, 184 Vt. 365 ("In the context of land-use regulation, our approach to complaints of standardless, arbitrary discretion focuses on the criteria for due process and equal protection.") (citations omitted).

The United States Supreme Court has been careful to maintain a distinction between due process considerations and takings jurisprudence. See Lingle v. Chevron U.S.A. Inc., 544 U.S. 528, 540-45 (2005). In Lingle, the U. S. Supreme Court invalidated the "substantially advances a legitimate state interest" formula as a method of identifying compensable regulatory takings, concluding that "this formula prescribes an inquiry in the nature of a due process, not a takings, test, and that it has no proper place in our takings jurisprudence." Id. at 540, 545; see also Nollan v. Cal. Coastal Comm'n, 483 U.S. 825, 834 n.3 (1987) ("[T]here is no reason to believe (and the language of our cases gives some reason to disbelieve) that so long as the regulation of property is at issue the standards for takings challenges, due process challenges, and equal protection challenges are identical . . . .").

To adopt the Town's characterization of Questions 1, 2, and 3 as redundant would imply that every alleged unconstitutional taking equates to an alleged due process violation as an arbitrary and capricious municipal action. The arbitrary and capricious analysis, however, focuses on whether the municipality has acted according to clear standards sufficient to put applicants

and interested parties on notice of what parameters will govern the review of an application. See, e.g., In re Miserocchi, 170 Vt. 320, 325-26 (2000). An unconstitutional taking can occur without a due process violation in the context of clear standards and adequate notice. See, e.g., Alger v. Dep't of Labor & Indus., 2006 VT 115, ¶¶ 27-35, 181 Vt. 309 (holding that the trial court properly dismissed plaintiffs' claim that there was a taking without due process, but that there was a taking without just compensation). Thus, the two inquiries are independent and subject to review under distinct tests. Id., ¶¶ 28, 30-31.

Takings and due process considerations can often be related. See id. That does not mean that one consideration is necessarily subsumed within the other. Because we decline to blur the line between the separate inquiries underlying unconstitutional takings and due process violations, we **DENY** the Town's motion to strike Question 3 as redundant.

### II. Whether the Hehirs' proposed boundary line adjustment is properly before the Court.[3]

We now turn to the boundary line adjustment the Hehirs propose in their effort to bring the subdivision into compliance with the one curb cut per lot limitation. See Regulations §§ 10.4.1, 11.1.2. The Town argues that the boundary line adjustment is not a valid issue in this appeal because the DRB did not evaluate it in the first instance below.

The Hehirs concede that the DRB did not evaluate the boundary adjustment. They assert that debuting the boundary line adjustment for the first time before this Court does not substantially or materially change the application they presented to the DRB such that dismissal or remand are required.

We first note that this is a Court of limited appellate jurisdiction and, as such, we may only review applications that have been subjected to a full review by the appropriate tribunal

---

[3] This issue is raised by Question 4 of the Hehirs' Statement of Questions. Question 4 asks whether the boundary line adjustment should be approved pursuant to § 10.7 of the Regulations.

The Town originally moved to dismiss this Question before the parties' cross-motions for summary judgment on the issue. We here clarify that our conclusion would be the same under the respective V.R.C.P. 12(b)(1) and V.R.C.P. 56 standards. The distinction between the two motion types is negligible in this instance because this is a legal question of jurisdiction and materials outside of the pleadings are of minimal relevance to our decision. Further, the parties have had a full and fair opportunity to present their arguments on Question 4. See Nash v. Coxon, 152 Vt. 313, 314-15 (1989) (reversing and remanding after the trial court improperly granted a motion to dismiss, concluding that summary judgment standards should apply to give the parties the appropriate opportunity to respond).

below.  In re Margaret Pratt Assisted Living Site Plan, Conditional Use & Act 250 Approvals, Nos. 111-8-14 Vtec, et al., slip op. at 12-13 (Vt. Super. Ct. Envtl. Div. June 21, 2016) (Durkin, J.) (citing In re Torres, 154 Vt. 233, 236 (1990)).  It follows that revisions to an application that "change the nature of the permit requested, alter the location of the project, or increase the scope of the project" cannot be reviewed by this Court in the first instance.  Id. at 13 (citing In re Chaves A250 Permit Reconsider, 2014 VT 5, ¶ 13, 195 Vt. 467; In re Sisters & Bros. Inv. Grp., 2009 VT 58, ¶ 21, 186 Vt. 103).  In other words, any application that is "substantially or materially changed" from the application presented below cannot proceed before this Court.  In re LeGrand & Scata Variance Application, No. 110-8-14 Vtec, slip op. at 3 (Vt. Super. Ct. Envtl. Div. Nov. 12, 2015) (Durkin, J.).

This Court has discussed certain factors that aid in the assessment of whether a change is truly substantial.  See, e.g., Margaret Pratt, Nos. 111-8-14 Vtec, et al., at 13 (June 21, 2016).  One of the primary considerations is whether the contents of the application below put all parties affected by the changed project on notice of the option or need to appeal.  See In re Lathrop Ltd. P'ship, 2015 VT 49, ¶¶ 104, 107, 199 Vt. 19.  Thus, when changes to applications on appeal have the potential to shift the impacts of the development to parties not before the Court, or who did not appear below, dismissal or remand is necessary to allow for proper notice and the full participation by the newly affected parties.  See id.; see also Pintair Discretionary Permit, No. 54-5-15 Vtec, slip op. at 6-7 (Vt. Super. Ct. Envtl. Div. May 27, 2016) (Walsh, J.) (incorporating the considerations affecting the decision to remand in Act 250 matters, as discussed in Lathrop, into the municipal permit context).

We are less inclined to dismiss or remand when the applicant made the changes in response to specific objections by opposing parties, the municipal panel, or this Court.  Chaves, 2014 VT 5, ¶ 16 (citing Sisters & Bros., 2009 VT 58, ¶ 21).  However, our discretion in this regard is limited by statute and precedent.

For instance, the notice requirements of 24 V.S.A. § 4464(a)(1)(C) require the DRB to include a "description of the proposed project" when it publicly warns a subdivision permit hearing.  Changes that are too substantial will not satisfy this requirement, irrespective of their motivating purpose.  See Torres, 154 Vt. at 235-37.  The Vermont Supreme Court in Torres held

that the trial court was required to remand when, on appeal, the applicants altered the legal definition of their proposal in a way that changed the applicable provisions in the regulations. Id. The Supreme Court explained that the change from a permitted use application to a conditional use application "could never serve to provide public notice of the conditional use application." Id. at 236. Interpreting Torres, we conclude that this Court cannot evaluate a changed application seeking permissions that implicate new, unwarned regulatory provisions.

Because the extent of this Court's appellate review is a jurisdictional matter, the requirements discussed here are not waivable. Id. at 236-37. While the Town moves to dismiss, we consider this to be an issue of remand. A remand to the relevant tribunal for a first look is the traditional response to substantial application changes made during the pendency of an appeal. See, e.g., In re Martin & Perry, LLC, Final Plat Application, No. 222-10-08 Vtec, slip op. at 6-7 (Vt. Envtl. Ct. Aug. 13, 2009) (Durkin, J.) (requiring a remand in the event the applicant submitted its newly proposed waiver requests, which implicated new regulatory provisions). This Court has discretion to order a remand in rendering its judgment. See V.R.E.C.P. 5(j); see also In re Maple Tree Place, 156 Vt. 494, 501 (1991) (affirming that the decision to remand "necessarily must be an area of trial court discretion . . . .").

The Hehirs modified their proposal to include the boundary line adjustment in response to the DRB's denial of their request for a waiver from the one curb cut limitation. This is a factor that usually weighs against remand. See Sisters & Bros., 2009 VT 58, ¶ 21. That consideration alone, however, does not outweigh the significant change they have premiered before this Court.

The boundary adjustment will alter the dimensions of the Hehirs' proposed Lot 2. It also requires the application of new provisions in the Regulations, which raise questions distinct from those relevant to a curb cut. See Regulations § 10.7 (boundary adjustment); cf. Regulations §§ 10.4.1, 11.1.2 (curb cut limitation). It is uncontested that the DRB has not had the opportunity to apply those regulatory provisions to this aspect of the proposal. The May 24, 2018 DRB hearing involved (and was warned for) an application for a three-lot subdivision and a request for a waiver from the one curb cut limitation, not a boundary adjustment. New parties not presently before this Court may have concerns that were not implicated by the subdivision as originally proposed. These parties must be provided with notice and the opportunity to be heard before the DRB.

9

Based on the foregoing, we **REMAND** the pending application to the DRB to evaluate the Hehirs' proposed boundary line adjustment in the first instance.[4]

### III. Whether the recreational easement condition constitutes a taking by the Town.[5]

While we ultimately remand, this Court has the authority to reach those issues before us that are likely to arise during the future litigation of a matter in the interest of judicial economy. See In re Hinesburg Hannaford Act 250 Permit, 2017 VT 106, ¶ 23 (citing In re Taft Corners Assocs., 160 Vt. 583, 632 (1993)); see also V.R.E.C.P. 5(j). Thus, we turn to the question of whether the recreational easement condition constitutes an unconstitutional taking by the Town, which is distinct from the remanded boundary adjustment issue.[6]

---

[4] The conclusion we reach here **MOOTS** the Town's motion to dismiss Question 4, as well as its motion for summary judgment on this issue. This conclusion further **MOOTS** the Hehirs' motion for summary judgment regarding Question 4, which asks this Court to approve the boundary adjustment on its merits. See In re Tasha Tudor & Family, Inc., No. 112-6-09 Vtec, slip op. at 4 (Vt. Envtl. Ct. Dec. 23, 2009) (Wright, J.) (mooting issues because of remand).

Remand also renders the Hehirs' motion to add Questions 5 and 6—which raise challenges to the constitutional validity of the one curb cut limitation in the Regulations—**MOOT**. The Hehirs moved to add these questions in the alternative, should we dismiss Question 4 for lack of jurisdiction as requested by the Town. Because we do not dismiss Question 4 here, but rather remand the application which now includes the boundary adjustment request, we do not reach Questions 5 and 6. This has the collateral effect of **MOOTING** the Town's motion for summary judgment on Questions 5 and 6.

[5] The parties appear to agree, as do we, that this issue is jointly raised by Questions 1 and 2 of the Hehirs' Statement of Questions.

[6] Though the Town does not challenge this Court's jurisdiction over the takings claim, we note, for the sake of completeness, that the Hehirs' takings arguments are properly before us. While parties seeking to challenge a municipal ordinance on its face must bring an action in the Washington Superior Court, this Court has jurisdiction over unconstitutional takings claims arising in the context of a specific permit application on appeal. See 3 V.S.A. § 807 (limiting declaratory judgment actions to the Washington Superior Court); 24 V.S.A. § 4472(b) (providing this Court with jurisdiction over constitutional challenges related to, *inter alia*, permit appeals); see also In re Britting Wastewater/Water Supply Permit, No. 259-11-07 Vtec, slip op. at 5 (Vt. Envtl. Ct. Apr. 7, 2008) (Wright, J.) (citations omitted).

We further note that we consider an evaluation of the recreational easement condition appropriate despite the *de novo* posture of our review. Parties who appeal a municipal decision to this Court that is not an "on the record" decision are "entitled to a *de novo* trial." 24 V.S.A. § 4472(a); see also 10 V.S.A. § 8504(h); V.R.E.C.P. 5(g). This means we consider the pending application "as though no [municipal] action whatever had been held prior thereto." Chioffi v. Winooski Zoning Bd., 151 Vt. 9, 11 (1989) (citation and internal quotation marks omitted). However, when it comes to conditions imposed by the municipality as part of a permit approval, this Court does not disregard the condition entirely. Parties can argue for the imposition of conditions, including the same conditions imposed by the municipal panel, by this Court on appeal. See, e.g., In re Lathrop Ltd. P'ship I, et al., Nos. 122-7-04 Vtec, 201-9-08 Vtec, 136-8-10 Vtec, slip op. at 16 (Vt. Super. Ct. Envtl. Div. Oct. 18, 2013) (Durkin, J.) (noting this Court's ability to condition permits to bring them into compliance), *aff'd in part, rev'd in part on other grounds*, 2015 VT 49, 199 Vt. 19 ; In re Freimour & Menard Conditional Use Permit, No. 59-4-11 Vtec, slip op. at 7-8 (Vt. Super. Ct. Envtl. Div. June 6, 2012) (Durkin, J.); In re McCullough Crushing Inc. Amended CU, et al., Nos. 179-10-10 Vtec, 3-1-10 Vtec, slip op. at 24-26 (Vt. Super. Ct. Envtl. Div. Feb. 16, 2017) (Walsh, J.). Accordingly, we review the propriety of a

The Hehirs argue that the recreational easement is not a permit condition designed to mitigate the impacts of their proposed subdivision, but instead qualifies as a taking of private property requiring just compensation.

The Town does not claim that it acquired the recreational easement pursuant to its eminent domain powers or provided the Hehirs with compensation. Instead, the Town asserts that the recreational easement requirement is a valid permit condition that ameliorates the increased fragmentation and population density that it alleges will result from the subdivision by enhancing pedestrian connectivity and non-vehicular travel.

This matter presents us with a question—whether a condition imposed during a municipality's permit review process belies an unconstitutional taking—that Vermont courts have not considered in depth. See Ondovchik Family Ltd. P'ship v. Agency of Transp., 2010 VT 35, ¶ 15 n.*, 187 Vt. 556 (noting this area of takings law when generally describing takings precedent); In re Appeal of the A. Johnson Co., No. 220-12-03 Vtec, slip op. at 2 (Vt. Envtl. Ct. Dec. 23, 2004) (Wright, J.) (mentioning that the statute that governs permit conditions leveraging development impact fees resolved this question); In re Okemo LLC PUD Amendment, No. 221-11-09 Vtec, slip op. at 8-9 (Vt. Super. Ct. Envtl. Div. Apr. 5, 2012) (Durkin, J.) (not reaching the question because the matter was decided on other grounds).

Given the dearth of Vermont case law on the question, we primarily rely on precedent of the United States Supreme Court, as well as courts in other jurisdictions who have interpreted that precedent, in evaluating the matter before us. See Ondovchik, 2010 VT 35, ¶ 14 ("'Because the federal and Vermont Constitutions use virtually the same test for takings review,' and given that landowner has not alleged any basis for distinguishing our analysis here, we find that the analysis and result in this case are the same under both the Fifth Amendment and Article 2 [of the Vermont Constitution]."). This is standard practice when a takings claim arises before this or the Vermont Supreme Court. See, e.g., id., ¶¶ 14-22; see also Alger, 2006 VT 115, ¶ 30; In re

condition *de novo* (if it is raised as an issue in the Statement of Questions). Implicit to the Town's defense of the recreational easement condition is its assertion that the condition is necessary to bring the Hehirs' subdivision into compliance with the Regulations. The Town effectively asks this Court to reimpose the condition in this appeal. Thus, it is appropriately before us in our *de novo* review.

Umpire Mtn., LLC WW & WS Permit, No. 171-12-12 Vtec, slip op. at 8-9 (Vt. Super. Ct. Envtl. Div. Feb. 27, 2014) (Walsh, J.).

Both the Vermont and federal constitutions prohibit the government from taking private property for public purposes without just compensation. U.S. Const. amend. V ("[N]or shall private property be taken for public use, without just compensation."); Chicago, B. & Q.R. Co. v. Chicago, 166 U.S. 226, 239 (1897) (affirming that the Fifth Amendment's Takings Clause applies to the states through the Fourteenth Amendment); Vt. Const. ch. I, art. 2 ("[P]rivate property ought to be subservient to public uses when necessity requires it, nevertheless, whenever any person's property is taken for the use of the public, the owner ought to receive an equivalent in money."). However, it is well established that municipal actions that impede a party's use of property do not necessarily rise to the level of a taking requiring payment. See Dolan v. City of Tigard, 512 U.S. 374, 384-85 (1994) (citing Pa. Coal Co. v. Mahon, 260 U.S. 393, 413 (1922)); see also, e.g., Eno v. City of Burlington, 125 Vt. 8, 13 (1965).

Nor do conditions a municipality includes as part of a permit approval necessarily implicate the Takings Clause, even for those conditions that deprive property owners of some use or privilege regarding their land. Nollan, 483 U.S. at 836; Koontz v. St. Johns River Water Mgmt. Dist., 570 U.S. 595, 605 (2013) (citing Vill. of Euclid v. Ambler Realty Co., 272 U.S. 365 (1926)).

In considering such permit conditions, the Supreme Court has remarked on the particular vulnerability of land-use permit applicants in situations where a condition of permit approval requires the applicant to dedicate property to the public without compensation. Koontz, 570 U.S. at 604-05. The Supreme Court noted the government's "broad discretion to deny a permit that is worth far more than property it would like to take." Id. at 605. This can give rise to situations where the property owner might give in to an unconstitutional demand to gain the value of the permit approval, frustrating the purposes of the Takings Clause. Id.; see also Dolan, 512 U.S. at 385 (describing the "well-settled doctrine of unconstitutional conditions," under which the government may not pressure a person to give up a constitutional right, including rights under the Takings Clause, in exchange for a discretionary government benefit) (citations and internal quotation marks omitted).

The question becomes at what point the municipal land use action constitutes a taking obligating the government to provide the property owner with just compensation. In the specific context of conditions imposed in the ad hoc, adjudicative setting of municipal permit review, the United States Supreme Court has articulated the factors relevant to determining whether the condition functions as a taking. See Nollan, 483 U.S. at 834-37; Dolan, 512 U.S. at 388-91. In Nollan and Dolan, the Supreme Court established that a municipality can condition approval of a permit on the dedication of property to the public without incurring a taking when the condition meets two requirements.[7]

First, there must be an "essential nexus" between the condition and the legitimate government interests it furthers. Nollan, 483 U.S. at 837. Second, there needs to be a "rough proportionality" between the nature and extent of the condition and the social costs of the proposed development. Dolan, 512 U.S. at 391. Said another way, "the government may choose whether and how a permit applicant is required to mitigate the impacts of a proposed development, but it may not leverage its legitimate interest in mitigation to pursue governmental ends that lack an essential nexus and rough proportionality to those impacts." Id. at 606.

Thus, we now turn to the recreational easement condition to assess whether it has an essential nexus to a legitimate Town purpose. Further, we consider whether the condition is tempered to respond to the limited impacts of the Hehirs' proposed subdivision without imposing a disproportionate burden upon them that should instead be borne by the public through eminent domain proceedings.

**A. Whether the Town asserts a legitimate government interest.**

The Town offers that it imposed the recreational easement to further its interests in pedestrian connectivity and multi-use pathways that reduce automotive traffic, increase the safety of non-automotive travel, and provide enhanced opportunities for recreation.[8]

---

[7] The analysis we undertake in this specific corner of takings jurisprudence—public dedications effected through municipal permit conditions—does not have implications for the more common analysis Vermont courts apply when assessing whether government regulation amounts to a taking. See, e.g., Ondovchik, 2010 VT 35, ¶¶ 14-22 (evaluating a more conventional takings claim under the common analysis); see also Lingle, 544 U.S. at 546-48 (distinguishing the Nollan and Dolan takings test from traditional takings considerations).

[8] The Hehirs frame the Town's interest in terms specific to this matter, arguing that the Town does not have a valid interest in dedicating a portion of *their* land for public use. This perspective introduces the case-specific questions of relevance and proportionality into the analysis too early. In evaluating the legitimacy of the Town's

The question of what constitutes a legitimate government interest does not have a clear answer. As stated by the United States Supreme Court, "[o]ur cases have not elaborated on the standards for determining what constitutes a 'legitimate state interest' . . . . They have made clear, however, that a broad range of governmental purposes and regulations satisfies these requirements." Nollan, 483 U.S. at 834-35 (citing multiple examples). In that case, which involved coastal development, the U. S. Supreme Court considered the regulatory goal of "protecting the public's ability to see the beach" to be legitimate. Id. at 835-36. In Dolan, the U. S. Supreme Court considered reduction of traffic congestion through a "pedestrian/bicycle pathway system" a legitimate government interest. 512 U.S. at 387-88 (citations omitted).

In Vermont, the government has a legitimate interest in the protection of public health, safety, and welfare. See In re Letourneau, 168 Vt. 539, 543-44 (1998) (discussing this principle in the context of a constitutional challenge to zoning regulations). The government can have a legitimate interest in traffic control, and also in public safety relating to highways. See OMYA, Inc. v. Town of Middlebury, 171 Vt. 532, 533 (2000) (citation omitted); State v. Solomon, 128 Vt. 197, 199-200 (1969) (citations omitted).

The Vermont Legislature has authorized municipalities to act to protect the public health, balance population concentration, mitigate traffic, and promote good civic design. See 24 V.S.A. § 4302(a), (c)(4) (setting out the general purposes of the Vermont Planning and Development Act and specifically noting the goal of providing "public transit options and paths for pedestrians and bicyclers."); 24 V.S.A. § 4411(a) (authorizing municipalities to regulate land development to further "public health, safety, or welfare.").

Other jurisdictions faced with similar facts have found the government's interests legitimate. For instance, in Hallmark Inns & Resorts, Inc. v. City of Lake Oswego, which concerned a public pedestrian pathway condition, the Court of Appeals of Oregon concluded that

---

asserted interest, we do not first consider the fact-specific context, but instead evaluate whether, as a general matter, the Town goal that motivated the condition advances public health, safety, and welfare. See, e.g., In re Letourneau, 168 Vt. 539, 543-44 (1998) (evaluating whether setbacks advance a legitimate government interest in the takings context and concluding that "as a *general* proposition setback requirements are valid" and "[n]umerous *general* purposes of zoning regulation are promoted by setback regulation." (emphasis added)) (citation omitted). Here that means we consider whether facilitating pedestrian connectivity and reducing automotive traffic is generally a legitimate municipal purpose.

"promoting transportation connectivity and alternative modes of nonvehicular travel" qualified as a legitimate governmental interest. 193 Or.App. 24, 36 (2004); see also Burton v. Clark County, 91 Wash.App. 505, 526 (1998) (concluding that a condition requiring the applicant to build a road served valid government purposes, including traffic control).

Here, the Town seeks to establish the recreational easement to reduce vehicular traffic, foster public safety for pedestrian commuters, and provide recreational opportunities. There is no indication that the Town is furthering private or commercial interests. See Burton, 91 Wash.App. at 521 (casting doubt on the legitimacy of government exactions that primarily serve commercial interests) (citation omitted). Nor do the Hehirs dispute the legitimacy of these interests as a general matter, as discussed above in footnote 8. Thus, we conclude that these goals, in service of the good of the community, fit squarely within the category of legitimate government interests.

**B. Whether the recreational easement has an essential nexus to the Town's interest in pedestrian connectivity.**

We must next evaluate the nexus between the recreational easement and the legitimate interests the Town seeks to further through the condition. This inquiry essentially requires us to evaluate the fit between the means chosen by the Town to further its ends. As described in Ehrlich v. City of Culver City, the effect of the essential nexus requirement "is to rule out the imposition of a certain species of regulatory conditions: those which are either logically unrelated to legitimate regulatory objectives or fail to exhibit the constitutionally required 'fit' between conditional means and legitimate governmental ends." 12 Cal.4th 854, 868 (1996).

In Nollan, the United States Supreme Court concluded that a condition requiring the applicants to provide a public easement along the beach portion of the applicants' property did not adequately support the government's legitimate interest in preserving the view of the beach and ocean. 483 U.S. at 838-39. The Supreme Court offered that a condition obligating the applicants to "provide a viewing spot on their property for passersby with whose sighting of the ocean their new house would interfere" would be constitutional. Id. at 836. This hypothetical condition would have properly advanced the government's ends in a way that the condition at issue did not.

On the other hand, the Court in <u>Dolan</u> wasted no time in recognizing that a satisfactory causal connection existed between the means and ends under review in that case. The U. S. Supreme Court considered it "obvious" that a pedestrian and bicycle pathway would advance the city's goal of reducing traffic congestion. 512 U.S. at 387-88 (citing A. Nelson, Public Provision of Pedestrian and Bicycle Access Ways: Public Policy Rationale and the Nature of Private Benefits 11 (Ctr. for Planning Dev., Ga. Inst. of Tech., Working Paper Series (Jan. 1994))). Similarly, the Court of Appeals of Oregon swiftly reached its conclusion that a public pedestrian path shared an essential nexus with the city's purpose of promoting transportation connectivity. <u>Hallmark Inns</u>, 193 Or.App. at 35-36.

We align ourselves with the <u>Dolan</u> and <u>Hallmark Inns</u> precedent. A recreational multi-use path logically promotes safe non-motorized travel and recreation. Accordingly, we conclude that there is an essential nexus between the recreational easement and the legitimate government interests it seeks to advance.

**C. Whether the burden the recreational easement places on the Hehirs is roughly proportional to the impact of the Hehirs' proposed subdivision.**

In the final stage of the analysis, this Court must determine if "the degree of exactions demanded by the [government's] permit condition[] bears the required relationship to the projected impact of [the applicants'] proposed development." <u>Dolan</u>, 512 U.S. at 388. This requires us to assess whether the condition imposed serves the limited purpose of mitigating the impacts of the proposed development, without unduly burdening the applicants with a public dedication for which they did not cause a need. See <u>Koontz</u>, 570 U.S. at 605 (explaining that municipal conditions are constitutional when they do no more than ensure that "landowners internalize the negative externalities of their conduct . . . ." (citing <u>Vill. of Euclid</u>, 272 U.S. 365)).

When imposing the condition, the government must make "some sort of individualized determination" that the condition is proportional in nature and extent to the impacts of the development, though a "precise mathematical calculation" is not required. <u>Dolan</u>, 512 U.S. at 391. The government bears the burden of showing the proportionality of the condition. <u>Id</u>. at 395, 398 (discussing, in both the majority and dissenting opinions, the burden the majority allocated to the government).

The Hehirs argue that the impact of the recreational easement is not proportional to the impact of their proposed subdivision, which will result in one additional residential lot. The Hehirs also assert that the Town did not make the type of individualized determination of proportionality required by our precedent.

The Town contends that the recreational easement—which will run along the edge of the Property and overlap with the preexisting power-line easement—will produce a minimal impact on the Hehirs' interests. In the Town's view, this impact is proportional and responsive to the consequences of adding another lot to the Property, because an additional lot means increased fragmentation in the community, an additional home, additional vehicles, and more people.

Courts considering the proportionality of public dedications of private land in the form of conditions of permit approval have focused on "the right to exclude" others from one's property as "one of the most essential sticks in the bundle of rights that are commonly characterized as property." Nollan, 483 U.S. at 831 (citing Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 433 (1982) (quotation omitted)); see also Chioffi v. City of Winooski, 165 Vt. 37, 43 (1996) (describing the right to exclude as one of "the fundamental incidents of ownership") (citation and internal quotation marks omitted). The recreational easement would deprive the Hehirs of all right to control when the public could enter their land. See Dolan, 512 U.S. at 394 (finding a public pathway condition disproportionate to a store expansion in part because "[the applicant's] right to exclude would not be regulated, it would be eviscerated."); see also United States v. Orito, 413 U.S. 139, 142 ("The Constitution extends special safeguards to the privacy of the home . . . .") (citations omitted). The fact that the recreational easement as proposed runs partially within a power-line easement, and runs along the outer edges of the Property, does not significantly mitigate the impact of this deprivation.[9]

---

[9] The Hehirs allege a dispute of material fact regarding the extent of the impact of the recreational easement condition. They assert that the recreational easement will prevent the installation of a driveway on the proposed Lot 3 and intrude on the building envelope, rendering development of the Lot impossible. The Hehirs do not support their assertions with evidentiary material as required by V.R.C.P. 56(c)(1)(A). Irrespective of this deficiency, we conclude that the factual dispute they raise is not material to the legal question before us. Even taking the facts as presented by the Town—that the recreational easement will not affect Lot 3's building envelope or obstruct its driveway—the record supports our conclusion that the impact of the condition on the Hehirs is disproportionate to the impacts caused by their proposed subdivision.

17

We evaluate this against the impact of the Hehirs' proposed subdivision. The Town first alleges that the recreational easement condition is justified because the subdivision will contribute to fragmentation.

The Hehirs' application proposes to divide a two-lot property into three lots on the same acreage. There is no indication that this change will intrude upon an existing public pathway or otherwise impair connectivity in the neighborhood relative to the present circumstances on the Property. Pedestrians and bicyclists are currently obliged to travel around, not through, the Property. A third lot does not change or impair this situation. See Dolan, 512 U.S. at 394 ("If petitioner's proposed development had somehow encroached on existing greenway space in the city, it would have been reasonable to require petitioner to provide some alternative greenway space for the public . . . . But that is not the case here."). Thus, the Town's argument regarding fragmentation is misplaced. The act of subdivision, in and of itself, does not impact connectivity so that a public dedication enhancing connectivity is an appropriate response.

Turning to the Town's next contention, the impact of adding an additional lot does have slightly more bearing on the concerns the Town seeks to address with the recreational easement. An additional lot will likely result in an additional residence, the addition of one or more vehicles to the roadways, and more people in the neighborhood. However, the impact of one additional residence on the Property is negligible relative to the impact of the recreational easement. See Id. (concluding that the public recreational path was not proportional to the store expansion even though the proposed development might "generate roughly 435 additional [vehicle and bicycle] trips per day."). It is also concerning that the record provides no evidence of the Town conducting "some sort of individualized determination" prior to imposing the recreational easement condition upon the Hehirs and their land. Dolan, 512 U.S. at 391. While there is no requirement for a "precise mathematical calculation"—id.—it appears that the Town only began its calculation of proportionality after the Hehirs challenged the imposed condition in this litigation.

The Town's own proffered justifications demonstrate that the recreational easement is meant to benefit the public at large and to offset impacts of development in the neighborhood of the Property generally, not of the Hehirs' development specifically. The Town, as well as the Regulations, focus on the need for connectivity for neighborhoods as a whole, not for minor

18

subdivisions on limited acreage. Thus, the condition is not proportional to the impacts specific to the proposed development that it purportedly cures. See Nollan, 483 U.S. at 841 (closing by saying that while the government "may well be right that [its goal] is a good idea . . . that does not establish that the [applicants] alone can be compelled to contribute to its realization."). The recreational easement does not have the limited effect of mitigating the impact of one more family on the block. It is a countermeasure designed to address a community-wide consequence of development that may be incrementally exacerbated by the Hehirs' proposal, but is not caused by it. Therefore, we conclude that the recreational easement condition represents the type of public dedication of private land for which takings jurisprudence requires just compensation.[10]

While the Hehirs may benefit from the recreational easement as users, or in the form of increased property values, this itself is not a dispositive factor. See Hallmark Inns, 193 Or.App. at 40 (citing Dolan, 512 U.S. at 391; Art Piculell Grp. v. Clackamas Cnty., 142 Or.App. 327, 336-37 (1996)). First, there is no indication that this benefit is certain, or even likely. Also, even if a benefit accrues, the advantages the Town describes will also benefit the public at large. The Town fails to justify why the Hehirs alone should be made to contribute to its realization.

We also conclude that the Town has not made the type of "individualized determination" regarding the proportionality of the condition required to meet its burden under Dolan. 512 U.S. at 388, 395. The DRB decision below premised the recreational easement condition on the importance and need for such paths in Jericho generally, without drawing the vital connection between the condition and how the Hehirs' proposed subdivision will impede connectivity. See Hallmark Inns, 193 Or.App. at 37 (confirming that the government made an individualized determination where its findings were based on "particularized projections" of "considerable detail" and "included attempts to quantify the impact of the development on the city's transportation infrastructure.").

The only rationale specific to the Hehirs' subdivision offered by the DRB was the potential for fragmentation. The DRB did not, however, explain that potential consequence or

---

[10] We do not here decide the validity of any future eminent domain proceedings undertaken by the Town. To do so would require us to render an advisory opinion regarding circumstances not before us. See In re Petition of the Intervale Ctr., Inc., and Half Pint Farm, No. 89-5-08 Vtec, slip op. at 5 (Vt. Envtl. Ct. Feb. 24, 2009) (Durkin, J.) (citing In re Op. of the Justices, 115 Vt. 524, 529 (1949)).

demonstrate how the condition addresses fragmentation caused by the proposed subdivision specifically.

On appeal, the Town relies on similar justifications. It fails to show how the recreational easement only remedies the impact of a single additional lot in the neighborhood, without amounting to a dedication for the broader public good that implicates the Takings Clause. While Dolan does not require precise cost-benefit calculations, the Town's conclusory statement that additional lots mean additional vehicles and people does not qualify as an individualized determination. See Dolan, 512 U.S. at 395 (concluding that the government did not meet its burden of showing proportionality because arguing that the recreational path "could" offset traffic demand "is a far cry from a finding that the bicycle pathway system *will*, or is *likely to*, offset some of the traffic demand." (emphasis in original)) (internal quotations omitted).

In sum, the Town has shown an essential nexus between the recreational easement and its legitimate goals of increasing pedestrian connectivity, improving recreational opportunities, and reducing vehicular traffic. However, the condition fails under the "rough proportionality" analysis set forth in Dolan. This analysis directs us to the conclusion that the recreational easement amounts to an unconstitutional taking. The public dedication here is of the type the Town must acquire through eminent domain proceedings, not its permit review process.

For the foregoing reasons, we **GRANT** the Hehirs' motion for summary judgment on Questions 1 and 2 of their Statement of Questions. We **DENY** the Town's motion on these Questions for the same reasons.[11]

### IV.   Whether the deemed approval doctrine applies to the Hehirs' three prior curb cut applications.

In the Hehirs' November 19, 2018 response to the Town's motion for summary judgment, they argue for the first time that three previous curb cut applications that they submitted to the Town's Highway Department should be deemed approved pursuant to 24 V.S.A. § 4448(d). This section mandates that: "If the administrative officer fails to act with regard to a complete

---

[11] Because we invalidate the recreational easement condition as an unconstitutional taking under Nollan and Dolan, we do not reach the Hehirs' Question 3, which, as stated above, raises the issue of whether the Town applied the Regulations arbitrarily and capriciously when it imposed the condition. The Hehirs did not move for summary judgment on this Question, though the Town did. (The Town also moved to dismiss on this issue.) Accordingly, given our rulings here, we deem the Town's motions to be **MOOT**.

application for a permit within 30 days, whether by issuing a decision or by making a referral to the appropriate municipal panel, a permit shall be deemed issued on the 31st day." Cf. 24 V.S.A. § 4464(b)(1) (directing that applications shall be deemed approved if a municipal panel does not issue its decision within 45 days).

This Court cannot reach the merits or otherwise consider the Hehirs' deemed approval claim. The Hehirs' Statement of Questions contains no trace of a reference to the deemed approval doctrine. See V.R.E.C.P. 5(f) (limiting this Court's jurisdiction to those issues contained within the Statement of Questions); In re Garen, 174 Vt. 151, 156 (2002).

We do have jurisdiction over questions intrinsic to those issues raised in an appellant's Statement of Questions. In re Jolley Assocs., 2016 VT 99, ¶ 15, 203 Vt. 98. Here, however, the Hehirs' Statement of Questions limits this appeal to the issues surrounding the recreational easement and their proposed boundary line adjustment. We do not have a question before us raising the approval or denial of their curb cut proposal, much less the deemed approval doctrine.[12] Further, the Hehirs do not support their § 4448(d) argument with citations to materials in the record. We have no evidence of any curb cut applications before us.

Because the Hehirs raised the deemed approval doctrine as part of their response to the Town's motion for summary judgment, we do not have a motion before us to grant or deny. Given this posture, we are limited to noting that any arguments raised by the parties relating to the deemed approval doctrine and 24 V.S.A. § 4448(d) are beyond this Court's jurisdiction because they fall outside of the legal issues raised by the Hehirs in their Statement of Questions.

## Conclusion

As described in detail above, we conclude that Question 3 is not redundant with Questions 1 and 2 and **DENY** the Town's motion to strike Question 3. The Town's motion to clarify Question 3 is **MOOT** because the Hehirs effectively complied with the Town's request in their opposition to the motion and the Town concedes as much.

Because the Hehirs present the boundary line adjustment for the first time to this Court, and the adjustment represents a substantial and material change from the application presented

---

[12] We do not intend to suggest that a question on whether the curb cut waiver was properly denied would necessarily include the deemed approval doctrine as an issue intrinsic to that consideration.

to the DRB, we are compelled to **REMAND** on this issue, which was raised by Question 4 of the Statement of Questions. Remand has the effect of **MOOTING** the Town's motion to dismiss and motion for summary judgment on Question 4, along with the Hehirs' motion for summary judgment on the merits of the boundary line adjustment.

The Hehirs also moved to add Questions 5 and 6 in the event we dismissed Question 4. Because we did not do so, the Hehirs' motion to add these Questions, as well as the Town's motion for summary judgment on the Questions, are dismissed as **MOOT**.

We further conclude that the recreational easement imposed by the Town as a condition of approval amounts to an unconstitutional taking under the analysis laid out in the U. S. Supreme Court's Nollan and Dolan opinions. Thus we **GRANT** the Hehirs' motion for summary judgment on Questions 1 and 2 and **DENY** the Town's motion. This renders the Town's motion to dismiss and motion for summary judgment on Question 3 **MOOT**.

Finally, we **DENY** the Hehirs' motion for punitive damages against the Town and the individual DRB members. We also conclude that any arguments related to 24 V.S.A. § 4448(d) and the deemed approval doctrine are not properly before us, as this issue was not raised by the Hehirs in their Statement of Questions.

This concludes the current proceedings before the Court. A Judgment Order issues alongside this Decision.

Electronically signed on April 25, 2019 at Newfane, Vermont, pursuant to V.R.E.F. 7(d).

_____
Thomas S. Durkin, Superior Judge
Environmental Division